## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

EMERGENCY MEDICAL SERVICES
AUTHORITY, an Oklahoma public trust,

     Plaintiff,

v.

                                     Case No. 20-cv-455-GKF-CDL

AMERICAN MEDICAL RESPONSE
AMBULANCE SERVICE, INC.,

     Defendant.

## OPINION AND ORDER

This is a contract dispute between plaintiff Emergency Medical Services Authority (EMSA) and defendant American Medical Response Ambulance Service, Inc. (AMR). In 2013, the parties entered into a contract for the provision of emergency and non-emergency ambulance services in the Tulsa and Oklahoma City metro areas. [Doc. 2-2]. The parties extended the contract in October 2018. [Doc. 2-3]. As part of the contract and the contract extension, the parties agreed to gain sharing provisions wherein AMR's maximum profit for each contract year is ten percent. [Doc. 2-1, pp. 2-3, ¶ 13; Doc. 2-2, p. 3, ¶ 3; Doc. 2-3, p. 2, ¶ 3; Doc. 2-4, p. 2]. Additional profits must be remitted to EMSA.

AMR, believing the provision to be potentially unlawful or against public policy, has not made any gain sharing payments. [Doc. 11, p. 15, ¶ 1]. EMSA asserts a breach of contract claim against AMR for failing to comply with the gain sharing provisions. [Doc. 2, p. 11, ¶¶ 61-64]. EMSA calculates AMR owes, as of September 9, 2020, $16,039,895.80. [*Id.*, p. 9, ¶ 52]. EMSA has withheld that amount in payments otherwise due to AMR. [*Id.*, p. 11, ¶ 65]. AMR brings a counterclaim for breach of contract, arguing EMSA's payment withholding constitutes breach. [Doc. 11, p. 27, ¶ 9].

On September 30, 2020, defendant AMR filed its Motion for Preliminary Injunction to Maintain Status Quo to Protect the Financial Integrity and Stability of the Public's Emergency Medical Services System. [Doc. 15]. AMR requested an injunction freezing $16,039,895.80 that EMSA has withheld from AMR (the "Disputed Funds") or an order that EMSA deposit the Disputed Funds with the court until the litigation is resolved. On November 4, 2020, AMR filed its Second Motion for a Temporary Restraining Order and Preliminary Injunction. [Doc. 34]. Therein, AMR requested a TRO and injunction preventing EMSA from drawing on a $5 million letter of credit under the parties' contract or an order requiring EMSA deposit the $5 million with the court. The motions were fully briefed, and the court held a hearing on December 3, 2020. At the hearing, the court denied AMR's motions. The court now enters the following Findings of Fact and Conclusion of Law as required by Federal Rule of Civil Procedure 52(a)(2):

### Findings of Fact

1.  On September 25, 2013, AMR and EMSA entered into a contract for the provision of emergency and non-emergency ambulance services.

2.  On October 26, 2018, the parties extended the contract.

3.  The contract and the contract extension contain a gain sharing provision wherein AMR agreed to remit any profits above 10% to EMSA each contract year.

4.  AMR has not made a payment under the gain sharing provision.

5.  EMSA has withheld the amount it believes AMR owes under the gain sharing provision— $16,039,895.80.

6.  The parties' contract requires AMR to deposit an annually renewable performance letter of credit or cash escrow account with EMSA's Chief Financial Officer totaling $5,000,000.00.

7.  On October 15, 2013, AMR posted an Irrevocable Standby Letter of Credit (LOC) No. 68099625 in the amount of $5,000,000.00. The LOC has been renewed annually and remains in effect until October 1, 2021.

8.      Under the LOC, payment can only be issued to EMSA if EMSA certifies: (1) EMSA has declared AMR in material breach, (2) after AMR failed to cure the material breach under the contract, and (3) EMSA has terminated the agreement.

9.      On September 29, 2020, AMR provided written notice to EMSA "of EMSA's material breach of the Contract which constitutes an event of default by EMSA under the Contract." [Doc. 34-2, p. 1].  AMR stated that, as a result of EMSA's breach, "AMR is terminating the Contract, effective as soon as possible without jeopardizing public safety; however, we see no reason why the transition cannot be completed by January 31, 2021." [*Id.*, p. 2].

10.     On October 28, 2020, EMSA's Board of Directors voted to assume responsibility for all emergency and non-emergency ambulance services and terminate its contract with AMR effective November 30, 2020.

11.     EMSA took over direct operations of emergency and non-emergency ambulance services in the Tulsa and Oklahoma City metropolitan areas on December 1, 2020.

### Conclusions of Law

1.      "A preliminary injunction has the limited purpose of preserving the relative positions of the parties until a trial on the merits can be held.  It is an extraordinary remedy never awarded as of right.  A party may be granted a preliminary injunction only when monetary or other traditional remedies are inadequate, and the right to relief is clear and unequivocal." *DTC Energy Group, Inc. v. Hirschfeld*, 912 F.3d 1263, 1269-70 (10th Cir. 2018) (internal citations and alterations omitted).

2.      When notice is given for a TRO, the standards governing issuance of a preliminary injunction apply. *See TLX Acquisition Corp. v. Telex Corp.*, 679 F. Supp. 1022, 1028 (W.D. Okla. 1987).  Because EMSA received notice of AMR's application for a TRO and briefed the issues before the court held a hearing in which all parties were present, and because AMR's application for a TRO is substantively identical to its second request for a preliminary injunction, the court treats AMR's Second Motion for a Temporary Restraining Order and Preliminary Injunction [Doc. 34] as a single request for a preliminary injunction.

3.      A movant for a preliminary injunction must establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint. *KSQ Architects, P.C. v. Studzinski*, Case No. 16-CV-167-GKF-TLW, 2016 WL 9223840, at *1 (N.D. Okla. July 27, 2016).  "This requirement precludes courts from entering a preliminary injunction when the movant seeks intermediate relief beyond the claims of the complaint." *Id.*  The pleadings here contain no allegations related to the letter of credit.[1]  Accordingly, AMR's second motion [Doc. 34] must be denied.  But, even to the extent it might be said that there is a relationship between the letter of credit issue and the gain sharing dispute currently before the court, AMR's second motion is denied for the additional reasons set forth below.

---

[1] At the hearing, the court granted AMR twenty (20) days to file an amendment with regard to the letter of credit issue if it so desires.

4.     Pursuant to Federal Rule of Civil Procedure 65, a party seeking a preliminary injunction must show (1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest.  *DTC Energy,* 912 F.3d at 1270.

5.     "[I]f a movant seeks a preliminary injunction that falls into one of the [following] three categories . . . the movant must satisfy a heightened burden":  (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.  *O Centro Espirita Beneficiente v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (per curiam).  Courts in the Tenth Circuit "must recognize that any preliminary injunction fitting within one of the disfavored categories must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course."  *Id.*

6.     AMR's requests for injunctions prohibiting EMSA from spending the Disputed Funds and drawing upon the Letter of Credit are for prohibitory, as opposed to mandatory, injunctions.  In contrast, AMR's requests for injunctions requiring EMSA to deposit the Disputed Funds and the letter of credit with the court would require affirmative acts and, as a result, are for mandatory injunctions which trigger a heightened burden.

7.     "Because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements will be considered."  *DTC Energy*, 912 F.3d at 1270 (quoting *First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017)).  "Demonstrating irreparable harm is not an easy burden to fulfill."  *Id.* (quoting *First W. Capital*, 874 F.3d at 1141).  "[T]he movant must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages."  *Id.* (quoting *First W. Capital*, 874 F.3d at 1141).

8.     Regardless of whether a heightened burden applies, defendant AMR has not met its burden to show a significant risk that it will suffer irreparable harm absent either injunction.

       a.  With respect to AMR's argument that AMR and EMSA may be subject to severe damages under the False Claims Act if EMSA retains or spends the Disputed Funds, AMR offers no evidence beyond speculation that the parties will be subject to FCA litigation absent an injunction.  While AMR has reason to be concerned about the legality of the gain sharing provision, such concerns do not satisfy the standards for issuing an injunction.  Moreover, AMR does not show that the injunction it seeks would insulate it or EMSA from FCA liability where the parties agreed to the gain sharing provision in 2013 and again in 2018, and EMSA has already withheld the funds.  *See United States ex rel. Connor v. Salina Regional Health Center, Inc.*, 543 F.3d 1211, 1223 (10th Cir. 2008) ("any remuneration knowing and willfully offered, paid, solicited, or received" is a kickback forbidden under the FCA).

b. With respect to AMR's argument that it may be unable to collect a monetary judgment against EMSA should it prevail, AMR does not show a significant risk that EMSA would be unable to satisfy a judgment. Instead, the testimony at the hearing showed EMSA is presently solvent and AMR has not met its burden of showing that EMSA would not be able to satisfy a judgment in the future. In addition, there is no suggestion that sovereign immunity would preclude AMR from recovering a judgment here. *Cf. Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1157 (10th Cir. 2011) ("[T]he imposition of money damages that cannot later be recovered for reasons such as sovereign immunity constitutes irreparable injury.").

9. AMR has not met its burden to show a likelihood of success on the merits with respect to either motion.

a. AMR's argument that the gain sharing provision *might* be illegal is insufficient to enjoin EMSA's use of the Disputed Funds.

b. As for the second motion, AMR has not met its burden of showing it is substantially likely to succeed on the merits with respect to whether EMSA properly declared AMR in material breach after AMR failed to cure and whether EMSA terminated the agreement before AMR. Instead, EMSA's entitlement to the Letter of Credit presents close questions.

WHEREFORE, defendant's Motion for Preliminary Injunction to Maintain Status Quo to Protect the Financial Integrity and Stability of the Public's Emergency Medical Services System [Doc. 15] and Second Motion for a Temporary Restraining Order and Preliminary Injunction [Doc. 34] are denied.

DATED this 4th day of December, 2020.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE