**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

EMERGENCY MEDICAL SERVICES
AUTHORITY, an Oklahoma public trust,

      Plaintiff,

v.                                                                      Case No. 20-cv-455-GKF-CDL

AMERICAN MEDICAL RESPONSE
AMBULANCE SERVICE, INC.,

      Defendant.

## OPINION AND ORDER

Before the court are the plaintiff's motion to dismiss defendant's Amended Counterclaim[1] [Doc. 72], the plaintiff's Motion to Strike and Motion for More Definite Statement [Doc. 74], and the plaintiff's Motion to Strike or Seal Exhibit [Doc. 30].  For the reasons set forth below, the motion to dismiss is denied, the Motion to Strike and Motion for More Definite Statement is granted in part and denied in part, and the Motion to Strike or Seal Exhibit is denied.

**I. Background**

This is a contract dispute between plaintiff Emergency Medical Services Authority ("EMSA") and defendant American Medical Response Ambulance Service, Inc. ("AMR").  In 2013, the parties entered into a contract for the provision of emergency and non-emergency ambulance services in the Tulsa and Oklahoma City metro areas.  [Doc. 2-2].  The parties extended the contract in October 2018.  [Doc. 2-3].  As part of the contract and the contract extension, the parties agreed to a Gain Sharing provision wherein AMR's maximum profit for each contract year

---

[1]  The motion, styled as "Plaintiff's Second Rule 12 Motion" is simply a motion to dismiss defendant's Amended Counterclaim [Doc. 70].  Plaintiff's original motion to dismiss [Doc. 26] became moot upon defendant's filing of the Amended Counterclaim.

is ten percent of gross earnings.  [Doc. 2-1, pp. 2–3 ¶ 13; Doc. 2-2, p. 4 ¶ 11; Doc. 2-3, p. 2 ¶ 3; Doc. 2-4, p. 2].  Additional profits must be remitted to EMSA.

AMR, believing the provision to be potentially unlawful or against public policy, has not made any gain sharing payments.  [Doc. 69, p. 15 ¶ 1].  EMSA asserts a breach of contract claim against AMR for failing to comply with the contractual Gain Sharing provision.  [Doc. 2, p. 11 ¶¶ 61–64].  EMSA calculates AMR owes $16,039,895.00.  [Doc. 2, p. 9 ¶ 52].  EMSA has withheld that amount in payments otherwise due to AMR.   [Doc. 2, p. 11 ¶ 65].   AMR brings five counterclaims against EMSA in its Amended Counterclaim: (I) Breach of Contract, arguing EMSA's failure to pay for AMR's services constitutes a material breach; (II) Declaratory Judgment, requesting a determination of the validity of the Gain Sharing provision; (III) Contractual Indemnification; (IV) Common Law Indemnification; and (V) Wrongful Draw on the Letter of Credit.  [Doc. 70].

EMSA seeks dismissal of Counterclaims II, III, IV, and V under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  [Doc. 72, pp. 1–2].  In the alternative to dismissal of Counterclaim II (Declaratory Judgment), EMSA argues the court should decline to adjudicate it. [Doc. 72, pp. 1–2].  In the alternative to dismissal of Counterclaims III, IV, and V, EMSA seeks an order directing AMR to file a more definite statements for those counterclaims.  [Doc. 74, pp. 3-5].

EMSA also asks the court to strike the following:  the paragraph in the Amended Counterclaim's Prayer for Relief seeking an award of attorney fees and expenses incurred by AMR in a False Claims Act action filed by a relator in the U.S. District Court for the Eastern District of Texas [Doc. 70, p. 33 ¶ 8]; the "Accord and Satisfaction/Release," "Illegality," and "Duress" affirmative defenses contained in the Amended Answer [Doc. 69, pp. 23-24 ¶¶ 30, 32, 34]; certain

allegations in the Amended Answer regarding efforts to reach a compromise prior to this litigation [Doc. 69, p. 23 ¶ 30]; certain statements in AMR's response to the first motion to dismiss regarding efforts to reach a compromise prior to this litigation [Doc. 41, pp. 14–20]; certain statements in the earlier Motion for Preliminary Injunction regarding efforts to reach a compromise prior to this litigation [Doc. 15, pp. 9 n. 2, 10]; and certain statements in AMR's reply to the earlier Motion for Temporary Retraining Order and Preliminary Injunction regarding efforts to reach a compromise prior to this litigation [Doc. 54, p. 5]. In addition, EMSA asks the court to place the following filings under seal: the Amended Answer and Counterclaim; AMR's Motion for Preliminary Injunction; AMR's Response to Plaintiff's original Rule 12 Motion; and AMR's Reply to Plaintiff's Response to Defendant's Motion for a Temporary Restraining Order and Preliminary Injunction. EMSA also seeks an order directing AMR to not file any mention of efforts to reach a compromise prior to this litigation without prior leave of the court. [Doc. 73, p. 12].

In plaintiff's motion to Strike or Seal Exhibit [Doc. 30], EMSA requests to seal an exhibit it filed with its response to AMR's earlier motion to join necessary parties. [Doc. 29-2]. The exhibit is an email from AMR to a reporter providing a statement regarding efforts to reach a compromise prior to this litigation. EMSA states that it failed to carefully review the content of the exhibit before filing it. The court denied AMR's motion to join necessary parties on November 16, 2020. [Doc. 45]. The court then sealed the exhibit pending its ruling on EMSA's second Motion to Strike. [Doc. 79].

## II. Discussion

## A. Motion to Dismiss or Alternatively Motion for More Definite Statement

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019) (quoting *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d

1153, 1161 (10th Cir. 2018)).  In making this assessment, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Waller v. City of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)).  "[M]ere labels and conclusions and a formulaic recitation of the elements of a cause of action will not suffice." *Id.* (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)).  Accordingly, the court "will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* (quoting *Khalik*, 671 F.3d at 1191).

"On a motion for a more definite statement, under FRCP 12(e) the Court may require a party to cure defects in a vague or ambiguous pleading so as to allow the opposing party to frame a responsive pleading." *Southcrest, L.L.C. v. Bovis Lend Lease, Inc.*, No. 10-CV-0362-CVE-FHM, 2010 WL 4053544, at *2 (N.D. Okla. Oct. 14, 2010).  Specifically, FRCP 12(e) states that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); *see also* 5C C. Wright & A. Miller, Federal Practice and Procedure § 1376 (3d ed. 2020) ("Similarly, an answer that contains a counterclaim, a crossclaim, or a third-party claim is subject to a Rule 12(e) motion, at least with regard to that portion of the pleading setting forth the affirmative claim, since Rule 7(a) requires an answer to these types of pleadings.").  "The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e).  "[T]he purpose of a motion under Rule 12(e) is to provide the moving party with a remedy, when faced with an allegation that is so vague that the moving party cannot reasonably prepare a response." *Bhatti v. SSM Health Care of Okla., Inc.*, No. CIV-19-0655-F, 2020 WL 61052, at *3 (W.D. Okla. Jan. 6, 2020).  "The Court

has discretion to treat vague pleadings under either Rule 12(b)(6) or Rule 12(e)." *Southcrest*, 2010 WL 4053544, at *2 (citing Wright & Miller, Federal Practice and Procedure § 1376).

## 1. AMR's Two Indemnification Counterclaims

EMSA moves to dismiss both of AMR's indemnification counterclaims—Counterclaim III for indemnification under the contract and Counterclaim IV for indemnification under Oklahoma common law.  EMSA argues that AMR "cites no language in the Contract which would entitle AMR to receive indemnification from EMSA," nor "facts which would entitle AMR to be indemnified by EMSA under the common law."  [Doc. 27, p. 12].  Further, EMSA claims it is prevented from preparing a response to AMR's damages because AMR has ambiguously pled that it is seeking indemnification "for its damages relating to this lawsuit," without stating what those damages are.  [Doc. 27, p. 12].  Alternatively, EMSA moves under FRCP 12(e) for AMR to file a more definite statement regarding these two counterclaims.  [Doc. 27, pp. 31–32].

The court concurs that the current pleadings are too scant for EMSA to prepare a response, and grants EMSA's motion for a more definite statement regarding Counterclaims III and IV. AMR does not reference a contractual provision under which EMSA must indemnify AMR, and does not plead facts that might permit common law indemnification.  Further, the damages for which AMR seeks indemnification are unclear.

## 2. AMR's Declaratory Judgment Counterclaim

Pursuant to the Declaratory Judgment Act, "[i]n a case of *actual controversy* within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a) (emphases added).  Therefore, a party seeking a declaratory judgment must overcome two hurdles: (1) it must present an "actual controversy"; and (2) it must demonstrate that the court should exercise its

jurisdiction. *See Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1273 (10th Cir. 1989). EMSA argues that AMR fails at both hurdles, and therefore its declaratory judgment counterclaim—Counterclaim II—must be dismissed.

### i. "Actual Controversy"

"First, a declaratory judgment plaintiff must present the court with a suit based on an 'actual controversy,' a requirement the Supreme Court has repeatedly equated to the Constitution's case-or-controversy requirement." *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40 (1937)). EMSA argues that because AMR has only said that the Gain Sharing provision *may* be illegal or against public policy—while EMSA has said that *it is not* illegal—there is no actual controversy. [Doc. 27, pp. 13–14; Doc. 51, pp. 7–8]. In EMSA's view, an actual controversy exists only if AMR contends that the Gain Sharing provision *is* illegal or against public policy.

To determine whether there is an actual controversy, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *see also Surefoot*, 531 F.3d at 1244. This case is close to the "heartland of declaratory judgment cases" because it is not reliant on "unfulfilled future contingencies" or hypothetical fact patterns. *Surefoot*, 531 F.3d at 1245; *cf. MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 (2007) ("There is no dispute that the[] standard[] would have been satisfied if petitioner had taken the final step of refusing to make royalty payments under the 1997 license agreement."). Rather, this case is "based on historical facts and an already existing dispute . . . ." *Surefoot*, 531 F.3d at 1244. In this case, the parties clearly disagree about the legality of the Gain Sharing provisions, and

EMSA has allegedly withheld over $16,000,000 in payments owed to AMR because AMR has not made payments to EMSA pursuant to the Gain Sharing provisions.  As such, the court finds and concludes that the declaratory judgment claim presents an actual controversy.

### ii. *Mhoon/Brillhart* Factors

Second, a court must decide whether to exercise its jurisdiction and consider the declaratory judgment request.  The United States Supreme Court has made clear that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)); *see also State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994) (quoting *Pub. Affs. Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) ("The Supreme Court has long made clear that the Declaratory Judgment Act 'gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.'")).  In deciding whether it can and/or should exercise jurisdiction over a declaratory judgment claim, a court should consider the following factors:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Mhoon*, 31 F.3d at 983 (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987)). The court separately considers each of the *Brillhart/Mhoon* factors.  *See Casa Blanca de Punta Mita v. Rayment*, No. 19-CV-00188-GKF-JFJ, 2020 WL 4208055, at *9 (N.D. Okla. July 22, 2020).  EMSA argues that, based on these factors, the court should decline to adjudicate Counterclaim II.

After consideration, the Court finds for the purposes of the motion to dismiss that the four applicable *Brillhart/Mhoon* factors weigh in favor of exercising jurisdiction.[2]  First, it appears that a declaratory judgment would resolve the controversy.  Although the parties dispute the amount of money owed under the Gain Sharing provisions, and although there are additional issues to be considered, a determination of whether the Gain Sharing provision is legal or illegal will resolve the central issue of the dispute.  Second, exercising jurisdiction over this counterclaim will serve a useful purpose because it will clarify the legal relations at issue.  If the Gain Sharing provision is legal, EMSA is likely to succeed on its breach of contract claim.  Alternatively, if the Gain Sharing provision is illegal, AMR is likely to prevail on its counterclaim for breach of contract. Third, although EMSA argues that AMR is using Counterclaim II as a means of procedural fencing to "support its attempt to add the United States Department of Justice and the Attorney General of Oklahoma as parties" [Doc. 51, p. 8], the court has denied AMR's motion to join these parties. [Doc. 45, p. 4 ("The governments' general interest in the interpretation of their laws is not sufficient to mandate their joinder under Rule 19(a).")].  Finally, while there are alternative remedies, such as an award of damages based on either the breach of contract claim or counterclaim, a declaratory judgment may be the most effective remedy.  A determination of the lawfulness of the Gain Sharing provision appears to be necessary in order to render a damages award for either party, and the court may determine that declaratory judgment would serve a useful purpose in clarifying the legal relations at issue.  The court has reviewed EMSA's remaining

---

[2]  The parties agree that the fourth *Brillhart/Mhoon* factor—whether use of a declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction—does not apply here.  [Doc. 27, p. 15; Doc. 41, p. 12].  The court concurs and will only consider the other four factors.

arguments as to why the court ought not exercise jurisdiction over the declaratory judgment counterclaim, and is unpersuaded.

For the foregoing reasons, the court denies EMSA's motion to dismiss the declaratory judgment counterclaim.

### iii. Motion for More Definite Statement

The court denies EMSA's motion for a more definite statement regarding Counterclaim II, as AMR has adequately identified the public policies that may render the Gain Sharing provision invalid.

### 3. AMR's Fifth Counterclaim

In Counterclaim V–Wrongful Draw on the Letter of Credit–AMR alleges that EMSA wrongfully drew on a five million dollar Irrevocable Standby Letter of Credit because EMSA has not met all the conditions required to certify such a demand. [Doc. 70, pp. 30–31 ¶¶ 25–26]. AMR alleges that EMSA had to certify that: (1) EMSA declared AMR in material breach; (2) AMR failed to cure the material breach; and (3) EMSA terminated the agreement. [*Id.* pp. 30–31 ¶ 26]. AMR alleges it did not breach the contract, and therefore EMSA's drawing on the letter of credit was wrongful. [*Id.* pp. 31–32 ¶¶ 27–33]. EMSA counters that it has the sole discretion to determine whether AMR has failed to cure the breach. [Doc. 73, pp. 6–8]. However, EMSA's focus on curing moves past the fact that AMR alleges it did not breach the contract. The court previously considered the letter of credit issue—albeit under the standard of a preliminary injunction—and observed that "EMSA's entitlement to the Letter of Credit presents close questions." [Doc. 58, p. 5 ¶ 9.b.]. This remains true, and AMR has sufficiently pled a claim based on the letter of credit. The court finds and concludes that a more definite statement is unnecessary. Therefore, EMSA's motion to dismiss and motion for more definite statement regarding Counterclaim V are denied.

**B. The Motion to Strike**

EMSA moves to strike a variety of AMR's filings.  FRCP 12(f) provides, in pertinent part, that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  "Striking a pleading or part of a pleading is a 'drastic remedy and because a motion to strike may often be made as a dilatory tactic, motions to strike under Rule 12(f) generally are disfavored.'"  *Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc.*, No. 09-CV-0455-CVE-FHM, 2010 WL 132414, at *5 (N.D. Okla. Jan. 8, 2010) (quoting *Burget v. Capital West Sec., Inc.*, 2009 WL 4807619, *1 (W.D. Okla. Dec. 8, 2009)).  "[M]otions to strike are disfavored except under extraordinary circumstances." *SFF-TIR, LLC v. Stephenson*, 250 F. Supp. 3d 856, 1056 (N.D. Okla. 2017) (citing Wright & Miller, Federal Practice & Procedure § 1382).  "Motions to strike 'should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.'" *Copeland v. C.A.A.I.R., Inc.*, No. 17-CV-564-TCK-JFJ, 2019 WL 4307125 at * 13 (N.D. Okla. Sept. 11, 2019) (quoting Wright & Miller, Federal Practice & Procedure § 1382).

**1. Motion to Strike AMR's Prayer for Attorney Fees in a Prior Action**

EMSA moves to strike AMR's request for an award of attorney fees and expenses incurred in the earlier FCA action.  [Doc. 70, p. 33 ¶ 8].  The court agrees that AMR has failed to allege "any facts that would entitle it to obtain reimbursement for the attorney fees and expenses which it incurred" in the *prior* FCA action.  [Doc. 27, p. 29].  Therefore, EMSA's motion to strike AMR's request for an award of attorney fees and expenses incurred by AMR in the earlier FCA action is granted.

**2. Motion to Strike Affirmative Defenses and Certain Allegations in AMR's Amended Answer**

EMSA moves to strike the "Accord and Satisfaction/Release," "Illegality," and "Duress" affirmative defenses, and allegations regarding efforts to reach a settlement prior to this litigation found in the "Accord and Satisfaction/Release" defense.  [Doc. 69, p. 23 ¶¶ 30, 32, 34].  FRCP 8 requires that a defendant "state in short and plain terms its defenses to each claim asserted against it."  Fed. R. Civ. P. 8(b)(1)(A).  In addition, a "party may state as many separate claims or defenses as it has, regardless of consistency."  Fed. R. Civ. P. 8(d)(3).

District courts within the Tenth Circuit "are split as to whether the pleading requirements for complaints, which are set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply to statements of affirmative defenses."  *H.S. Field Servs., Inc. v. CEP Mid-Continent, LLC*, No. 12-CV-531-JED-PJC, 2013 WL 5407862, at *2 (N.D. Okla. Sept. 25, 2013) (collecting cases).  However, "[c]ourts review with scrutiny motions to strike that seek the determination of disputed and substantial questions of law, particularly when no significant discovery has occurred in the case."  *Id.* at *1.  (citing *United States v. Hardage*, 116 F.R.D. 460, 463 (W.D. Okla. 1987)).  "A defense should not be stricken if there is any real doubt about its validity, and the benefit of the doubt should be given to the pleader."  *Id.* (quotations and citations omitted).  The reason for this is obvious; defendants risk waiving or forfeiting an affirmative defense if they do not plead it.  *Id.*

**i. The Affirmative Defense of Accord and Satisfaction/Release**

AMR includes the following affirmative defense in its Amended Answer:

Accord and Satisfaction/Release:  The parties devoted more than a year to resolving the issues relating to the Gain Sharing provisions of the Contract and reached an agreed resolution several times, only to have Plaintiff "back out" of the settlement at the last minute.  While Plaintiff may attempt to make this case about Defendant's desire to keep the funds, such a contention is wrong as Defendant repeatedly made offers to amend the Contract and lower its rates to Plaintiff to allow Plaintiff an

11

opportunity to achieve costs savings in lieu of enforcing the problematic gain sharing arrangement contained in the Contract.

[Doc. 69, p. 23 ¶ 30].

EMSA argues that the allegations are insufficient because AMR never alleges that an accord was reached.  [Doc. 27, pp. 18–21].  AMR alleges  "[t]he parties devoted more than a year to resolving the issues relating to the Gain Sharing provisions of the Contract *and reached an agreed resolution several times, only to have Plaintiff 'back out' of the settlement at the last minute.*"  [Doc. 69, p. 23 ¶ 30 (emphasis added)].  As written, the affirmative defense is insufficient, as it can only be interpreted to mean that the parties never agreed upon a new contract.  The motion to strike the Accord and Satisfaction/Release affirmative defense is granted.

EMSA contends that the presence of AMR's allegations "in the public record defeats the very purpose of [Federal Rule of Evidence] 408."  [Doc. 27, p. 21].  EMSA argues that allowing such allegations into the public record will discourage attorneys from being frank during settlement negotiations prior to litigation.  [Doc. 27, pp. 21–23].  EMSA also asserts that such allegations are inadmissible under Federal Rule of Evidence 408 and, therefore, they should be stricken.  [Doc. 27, pp. 21–23].  However, Rule 408 does not apply, as the allegations are not "evidence" that AMR attempts to admit either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or contradiction.  *See* Fed. R. Evid. 408(a).  Rather, they were made in an attempt to raise a defense that the parties reached an agreement or agreements to remove the Gain Sharing provision.  Moreover, EMSA will not suffer significant prejudice from the statements.  The motion to strike the allegations contained in the affirmative defense is denied.

### ii. The Affirmative Defense of Illegality

AMR includes the following affirmative defense in its Amended Answer:

Illegality: To the extent that the Contract between the parties contains an illegal kickback or other improper remuneration arising from the Gain Sharing provision

of the Contract, or to the extent that the provision is found to be against public policy, the Court should find that Defendant correctly withheld Gain Sharing payments to Plaintiff.

[Doc. 69, p. 23 ¶ 32].   EMSA argues that AMR never actually "allege[s] that the Gain Sharing provision is illegal" and that "if AMR were to plead that the Gain Sharing provision is illegal, AMR would be required to identify which law has been or will be violated, and to state facts showing that EMSA's conduct violates that law." [Doc. 27, p. 30].  As discussed *supra*, AMR has sufficiently raised the issue of whether the provision is illegal.  Further, AMR spends considerable time in its Amended Answer explaining why it contends the provision is illegal.  [Doc. 69, pp. 15-24 ¶¶ 1-36].  EMSA's motion to strike this affirmative defense is denied.

### iii. The Affirmative Defense of Duress

AMR includes the following affirmative defense in its Amended Answer:

Duress:  Plaintiff compelled Defendant to sign the Contract extension in 2018 under duress.  Defendant was forced into accepting the 2018 Contract Extension, including the Gain Sharing provision, if it were to continue delivering lifesaving emergency and non-emergency ambulance services to the citizens of Oklahoma City and Tulsa.  Defendant attempted multiple times to negotiate out of the Gain Sharing provision, and offered alternative mutually acceptable rate schedules, but Plaintiff has persistently refused.  With a view to not disrupting pre-hospitalization services, Defendant was ultimately forced into accepting the Gain Sharing provision to the Contract Extension.

[Doc. 69, p. 24 ¶ 34].  EMSA argues that AMR has failed to allege duress because the only duress it was under was pressure from its own desire to take advantage of the benefits of the contract. [Doc. 74, pp. 10–11].  Insofar as AMR argues that EMSA had only just settled with the federal government in the FCA case, that there was very little time to negotiate, and that AMR was obligated to accept the Contract Extension in order to avoid disruption of emergency medical services, the court finds that it has plausibly pled the affirmative defense of duress.

**3. Motion to Strike Statements from AMR's Motion for Preliminary Injunction and its Reply Brief and AMR's Response to the First Rule 12 Motion**

EMSA argues that "[a]lthough Fed.R.Civ.P. 12(f) does not apply to filings other than pleadings, the Court should exercise its inherent power to strike and place under seal certain AMR motions and briefs" regarding efforts to reach a compromise prior to this litigation. [Doc. 72, p. 13]. "[O]nly material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly. Motions, briefs, . . . memoranda, objections, or affidavits may not be attacked by the motion to strike." *SFF-TIR*, 250 F. Supp. 3d at 978 (quoting *Dubrovin v. Ball Corp. Consol. Welfare Ben. Plan for Emps.*, No. 08-CV-00563-WYD-KMT, 2009 WL 5210498, at *1 (D. Colo. Dec. 23, 2009)). FRCP 7(a) defines "pleadings" as "a complaint or third-party complaint; an answer to a complaint, a third-party complaint, a counterclaim, or a crossclaim; and, 'if the court orders one, a reply to an answer.'" *Id.* at 978 (quoting *Ysais v. N.M. Jud. Standard Comm'n*, 616 F. Supp. 2d 1176, 1184 (D.N.M. 2009), *aff'd sub nom. Ysais v. New Mexico*, 373 F. App'x 863 (10th Cir. 2010)); *see also* Fed. R. Civ. P. 7(a). AMR's Motion for Preliminary Injunction and the briefs filed in connection therewith are not pleadings, and FRCP 12(f) does not apply. Further, AMR's Motion for Preliminary Injunction has already been denied by this court [Doc. 58], and the court sees no reason to invoke its inherent power to strike statements contained in AMR's reply brief. The same reasoning holds true for statements contained in AMR's response to EMSA's first motion to dismiss (which has since been dismissed as moot). Therefore, EMSA's motion to strike statements contained in AMR's Motion for Preliminary Injunction and its reply brief, and in AMR's response to EMSA's first motion to dismiss is denied.

**C. Motion to Seal**

Local Rule 79.1(a) expressly "disfavor[s]" the filing of "sealed documents, confidentiality agreements, and protective orders." N.D. Okla. Civ. R. 79.1(a). Rather, the court strongly prefers public filings, encompassing, if possible, "all arguments and all documents." *Id.* EMSA has not convinced the court that AMR's Amended Answer and Counterclaim, AMR's Motion for Preliminary Injunction, AMR's Response to EMSA's first Rule 12 Motion, and AMR's Reply to Plaintiff's Response to Defendant's Motion for a Temporary Restraining Order and Preliminary Injunction should be sealed. Accordingly, EMSA's prayers to seal these four filings are denied. EMSA's earlier Motion to Strike or Seal the Exhibit filed at Doc. 29-2 [Doc. 30] is also denied.

**III. Conclusion**

WHEREFORE, the plaintiff's Motion to Dismiss the Amended Counterclaim [Doc. 72] is denied. Plaintiff's Motion to Strike and Motion for More Definite Statement [Doc. 74] is granted in part and denied in part; the motion for more definite statement is granted regarding Counterclaims III and IV, and AMR shall file an amendment—if any—regarding those claims by April 15, 2021. The plaintiff's Motion to Strike or Seal Exhibit [Doc. 30] is denied, and the Court Clerk is hereby directed to unseal the Exhibit filed at Doc. 29-2.

IT IS SO ORDERED this 7th day of April, 2021.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE